Peter W. Billings (0330)
Robert G. Crockett (12067)
FABIAN & CLENDENIN,
 A Professional Corporation
215 South State Street, Suite 1200
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
Fax: (801) 596-2814
pbillings@fabianlaw.com
rcrockett@fabianlaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALSCO INC., a Nevada corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>NATIONAL SERVICE INDUSTRIES, INC., a California corporation; NATIONAL LINEN AND UNIFORM SERVICE LLC, a Georgia limited liability company; PLEASANTDALE HOLDINGS LLC, a Georgia limited liability company; MICHAEL R. KELLY, an individual; D. NICHOLAS SPRIGGS II, an individual,<br><br>        Defendants. | **COMPLAINT**<br><br>Civil No. 2:11-cv-00318-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff Alsco Inc. ("**Alsco**" or "**Plaintiff**") alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Alsco Inc. is a Nevada corporation, duly authorized to transact business in the

State of Utah, with its principal place of business is located in Salt Lake City, Utah.

2. National Service Industries, Inc. ("**NSI**") is a California corporation with its principal place of business in Atlanta, Georgia.

3. National Linen and Uniform Service LLC ("**NLUS**") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.

4. Pleasantdale Holdings LLC ("**Pleasantdale**") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.

5. Upon information and belief, Defendant Michael R. Kelly ("**Kelly**") is an individual residing in San Diego, California.

6. Upon information and belief, Defendant D. Nicholas Spriggs II ("**Spriggs**") is an individual residing in San Diego, California.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8. Venue is proper in this Court pursuant 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS

9. Prior to August, 2006, Defendants NSI, NLUS, and Pleasantdale were engaged in the general linen supply and commercial laundry business (the "**Linen Business**") and a software development and implementation business (collectively with the Linen Business, the "**Business**").

10. NSI, NLUS, and Pleasantdale were also engaged in other businesses, including an envelope business (the "**Other Business**").

11. Kelly is the CEO and Chairman of NSI, is a manager of NLUS, and a manager of Pleasantdale.

12. Spriggs is a former officer of NSI.

13. In 2003, NSI, NLUS, and Pleasantdale, through Kelly and Spriggs, negotiated and sold to Alsco its Linen Business covering the territory of the State of Florida for approximately $50 million (the "**Florida Transaction**").  The Florida Transaction closed in or about November 2003.

14. After the Florida Transaction closed, NSI, NLUS, and Pleasantdale, through Kelly, Spriggs, and other representatives, began negotiations with Alsco for the sale to Alsco of the Business covering all territories (the "**Sale**") which resulted in the Asset Purchase Agreement (the "**Asset Purchase Agreement**").  A true and correct copy of the Asset Purchase Agreement is attached hereto as "Exhibit A".

15. NSI, NLUS, and Pleasantdale negotiated the Sale over a period of almost three years, including through a long series of telephone calls, emails, and letters directed to Alsco in Utah.

16. Kelly and Spriggs were each heavily involved in the negotiations for the Sale, and each separately emailed and telephoned Alsco at its offices in Salt Lake City numerous times during the extensive negotiations.

17. Prior to closing the Sale in 2006, Defendants Kelly and Spriggs visited Utah and further negotiated the Sale with Alsco while in Utah.

18. Representatives of Alsco drafted the initial letter of intent and terms of the Sale, which were sent to NSI, NLUS, Pleasantdale, Kelly, and Spriggs from Alsco's offices in Salt Lake City, Utah.

19. Drafts of the terms of the Asset Purchase Agreement were exchanged between NSI, NLUS, and Pleasantdale in Atlanta, Georgia, and Alsco in Salt Lake City, Utah.

20. The parties finally agreed upon and executed the Asset Purchase Agreement on or about August 3, 2006 that provided for Alsco's purchase of the Business.

21. The Asset Purchase Agreement provides that:

a. NSI, NLUS, and Pleasantdale shall deliver all notices, consents, waivers and other communications required or permitted by the agreement to Steve Larson at Alsco's offices at 505 East South Temple, Salt Lake City, UT 84102, and to Alsco's attorney, William H. Adams, at 170 South Main Street, Suite 1125, Salt Lake City, Utah 84101;

b. Alsco is required to offer employment with Alsco to a certain number of employees of NSI, NLUS, and Pleasantdale employed in the Business at the time of the closing of the Sale.

22. The Asset Purchase Agreement further provides that:

a. Alsco assumes liabilities relating to certain workers' compensation claims, but only those workers' compensation claims with respect to employees employed in the Business (or in any other linen supply or commercial laundry businesses that were previously acquired by any of NSI, NLUS, and Pleasantdale or their respective affiliates) (the "**Assumed Workers' Comp. Claims**");

b. Alsco also assumes liabilities related to auto claims related to the Business, and general liability claims related to the Business (together with the Assumed Workers' Comp. Claims, the "**Reserved Claims**");

c. Alsco is required to post letters of credit with applicable governmental bodies or insurance carriers to secure the Reserved Claims (the "**Letters of Credit**");

4

      d.      NSI, NLUS, and Pleasantdale are required to reimburse and indemnify Alsco with respect to any costs incurred by Alsco with respect to any workers' compensation claims, other than the Assumed Workers' Comp. Claims, that are secured by the Letters of Credit;

      e.      NSI, NLUS, and Pleasantdale, jointly and severally, are required to reimburse Alsco for any loss, liability, claim, damage, expense (including costs of investigation and defense and reasonable attorneys' fees and expenses) incurred by Alsco in connection with liabilities not assumed by Alsco;

      f.      NSI is under an indefinite obligation to maintain a "net worth" that is reasonably sufficient for the performance of its obligations under the agreement (the "**Net Worth Covenant**").  "Net worth" is defined as: "the amount by which the fair market value of the total assets of NSI and its Subsidiaries (on a consolidated basis) exceeds the total liabilities of NSI and its Subsidiaries (on a consolidated basis), <u>provided</u> that the fair market value of any real estate shall be determined on a "quick sale" basis";

      g.      NSI, NLUS, and Pleasantdale are required to deliver a letter agreement, executed by Kelly and Spriggs, pursuant to which Kelly and Spriggs agree to cause NSI to not make any dividends, distributions or other payments to shareholders of NSI that would cause NSI to violate the covenants set forth in the Net Worth Covenant.

23.      Shortly after executing the Asset Purchase Agreement, Alsco, NSI, NLUS, and Pleasantdale executed the "Amendment" to the Asset Purchase Agreement (the "**Amendment**"). A true and correct copy of the Amendment is attached hereto as "Exhibit B".

24.     Contemporaneously with the execution of the Asset Purchase Agreement, pursuant to the Asset Purchase Agreement, and as essential consideration for Alsco entering into the Asset Purchase Agreement, Defendants Kelly and Spriggs executed a letter to Alsco, wherein they agreed to cause NSI to not make any "dividends, distributions or other payments to shareholders of NSI that would cause NSI to violate the [Net Worth Covenant]" (the "**Kelly Spriggs Letter**").  A true and correct copy of the Kelly Spriggs Letter is attached hereto as "Exhibit C".

25.     The Kelly Spriggs Letter is addressed to Steve Larson at Alsco's offices located at 505 East South Temple, Salt Lake City, Utah 84102.

26.     After closing the Sale, Alsco, from its offices in Salt Lake City, further negotiated with NSI, NLUS, and Pleasantdale regarding some post-closing adjustments.

27.     After closing the Sale, NSI, NLUS, and Pleasantdale delivered to Alsco at its offices in Salt Lake City post-closing documents.

28.     Alsco has fully performed all material obligations under the Asset Purchase Agreement, including by paying to NSI, NLUS, and Pleasantdale the purchase price of approximately $125 million, which amount was wired from Alsco in Salt Lake City to NSI, NLUS, and Pleasantdale.

29.     In compliance with the Asset Purchase Agreement, Alsco posted the required Letters of Credit, including with the state of South Carolina.

30.     In or about January 2011, the state of South Carolina informed Alsco that, in order to pay a certain workers' compensation claim related to the Other Business (the "**Hope Claim**"), it would draw on a $250,000 letter of credit posted by Alsco (the "**SC LOC**").

31. The Hope Claim is not a liability assumed by Alsco under the Asset Purchase Agreement.

32. Alsco, from its offices in Utah, contacted NSI through Kelly, Spriggs, and other representatives, and demanded that NSI pay the Hope Claim so that the state of South Carolina would not draw on the Alsco's SC LOC, or reimburse and indemnify Alsco in the event that the state of South Carolina drew on Alsco's SC LOC to pay the Hope Claim.

33. Kelly, on behalf of NSI, admitted on a telephone call to Alsco in Salt Lake City that the Hope Claim was NSI's responsibility and that NSI was required to pay the claim or reimburse and indemnify Alsco for any costs it incurred with respect to the Hope Claim.

34. Kelly further informed Alsco that NSI had no money to pay the Hope Claim, and that it could not reimburse or indemnify Alsco for the costs incurred by Alsco related to the Hope Claim.

35. NSI indeed did not pay the Hope Claim, and the state of South Carolina drew on the SC LOC in the maximum amount of $250,000 to satisfy the claim.

36. As a result of South Carolina's draw on the SC LOC, Alsco is indebted to the bank that issued the SC LOC in an amount totaling at least $250,000.

37. In accordance with Kelly's statement, NSI has not reimbursed or indemnified Alsco for the costs incurred by Alsco related to the Hope Claim.

38. Other states, including Tennessee and Florida, have approached Alsco about drawing on Alsco's letters of credit posted with those states to pay claims related to the Other Business and not assumed by Alsco.

### FIRST CAUSE OF ACTION
(Breach of Contract Against NSI, NLUS, and Pleasantdale)

39. Plaintiff incorporates into and as part of the claim each and every other paragraph in this Complaint.

40. The Asset Purchase Agreement and its Amendment is a valid, binding contract between Alsco, NSI, NLUS, and Pleasantdale.

41. Alsco has fully performed all material obligations under the Asset Purchase Agreement and the Amendment.

42. NSI, NLUS, and Pleasantdale have breached the Asset Purchase Agreement by failing to pay the Hope Claim and by failing to reimburse or indemnify Alsco for the costs incurred by Alsco related to the Hope Claim.

43. NSI, NLUS, and Pleasantdale have further breached the Asset Purchase Agreement by dissipating NSI's assets such that its total liabilities exceed the fair market value of its assets, thereby breaching the Net Worth Covenant.

44. As a result of NSI's, NLUS', and Pleasantdale's breaches, Alsco has suffered damages in an amount to be proven at trial, but for no less than $250,000, plus fees, charges, interest, costs, and attorney fees.

### SECOND CAUSE OF ACTION
(Breach of Contract Against Kelly and Spriggs)

45. Plaintiff incorporates into and as part of the claim each and every other paragraph in this Complaint.

46. The Kelly Spriggs Letter is a valid, binding agreement between Alsco and Defendants Kelly and Spriggs.

47. Upon information and belief, Kelly and Spriggs have breached the Kelly Spriggs Letter by causing NSI to make dividends, distributions, or other payments to shareholders of NSI such that NSI's total liabilities exceed the fair market value of its assets, in breach of the Net Worth Covenant in the Asset Purchase Agreement.

48. As a result of Kelly's and Spriggs' breach, Alsco has suffered damages in an amount to be proven at trial, but for no less than $250,000, plus fees, charges, interest, costs, and attorney fees.

### THIRD CAUSE OF ACTION
(Breach of Covenant of Good Faith and Fair Dealing against all Defendants)

49. Plaintiff incorporates into and as part of the claim each and every other paragraph in this Complaint.

50. Defendants have destroyed and/or injured Alsco's right to enjoy the fruits of the Asset Purchase Agreement and the Kelly Spriggs Letter by causing the assets of NSI to be unreasonably dissipated through distributions or payments such that NSI cannot fulfill its obligations under the Asset Purchase Agreement, which constitutes a breach of the covenant of good faith and fair dealing.

51. As a result of Defendants' breach of the covenant, Alsco has suffered damages in an amount to be proven at trial, but for no less than $250,000, plus fees, charges, interest, costs, and attorney fees.

### FOURTH CAUSE OF ACTION
(Fraudulent Transfer against NSI, Kelly, and Spriggs)

52. Plaintiff incorporates into and as part of the claim each and every other paragraph in this Complaint.

53.     Upon information and belief, NSI has conveyed some or all of its assets to Kelly and Spriggs with the actual intent to hinder, delay or defraud Alsco as a present or future creditor.

54.     Upon information and belief, NSI transferred or conveyed assets to Kelly and Spriggs, which transfers was made while NSI was insolvent or caused NSI to be insolvent, without fair consideration or without a return of reasonably equivalent value.

55.     Upon information and belief, NSI, while doing business, transferred or conveyed assets to Kelly and Spriggs without fair consideration or without a return of reasonably equivalent value, and after such transfers, NSI had an unreasonably small amount of or no capital.  The transfers referred to in paragraphs 53-55 are referred to collectively herein as the "**Transfers**" and the transferred assets referred to in those paragraphs are referred to collectively hereunder as the "**Transferred Assets**".

56.     Kelly and Spriggs received the Transferred Assets without fair consideration or for less than reasonably equivalent value, and with knowledge of NSI's intent to defraud Alsco.

57.     Due to NSI's fraudulent Transfers to Kelly and Spriggs, Alsco is entitled to:

   a.     A court order setting aside the Transfers to Kelly and Spriggs to the extent necessary to satisfy Alsco's claims hereunder;

   b.     A court order disregarding the conveyance or an order of attachment or levy in favor of Alsco on the property conveyed;

   c.     An injunction against further disposition by NSI, Kelly, and Spriggs of the Transferred Assets or of other property; and/or

        d.        Appointment of a receiver to take charge of the Transferred Assets or of other property of Kelly and Spriggs;

        e.        A court order granting Alsco its fees, charges, interest, costs, and attorney fees incurred in obtaining and enforcing the foregoing order.

WHEREFORE, Plaintiff prays for the following relief:

        A.        On the First Cause of Action, for damages from NSI, NLUS, and Pleasantdale in an amount to be proven at trial but for no less than $250,000, plus all expenses (including costs of investigation and defense and reasonable attorneys' fees and expenses) incurred by Alsco in this action and in connection with collection of the foregoing amounts, both before and after judgment and until paid in full;

        B.        On the Second Cause of Action, for damages from Kelly and Spriggs in an amount to be proven at trial, but for no less than $250,000, plus all expenses (including costs of investigation and defense and reasonable attorneys' fees and expenses) incurred by Alsco in this action and in connection with collection of the foregoing amounts, both before and after judgment and until paid in full;

        C.        On the Third Cause of Action, for damages from all Defendants in an amount to be proven at trial, but for no less than $250,000, plus all expenses (including costs of investigation and defense and reasonable attorneys' fees and expenses) incurred by Alsco in this action and in connection with collection of the foregoing amounts, both before and after judgment and until paid in full;

        D.        On the Fourth Cause of Action, for a court order:

      a.      setting aside the Transfers to Kelly and Spriggs to the extent necessary to satisfy Alsco's claims hereunder;

      b.      disregarding the conveyances to Kelly and Spriggs, or attaching or levying in favor of Alsco the property conveyed;

      c.      enjoining NSI, Kelly, and Spriggs against further disposition of the Transferred Assets or of other property; and/or

      d.      appointing a receiver to take charge of the Transferred Assets or of other property of Kelly or Spriggs;

      e.      granting Alsco reimbursement for all expenses (including costs of investigation and defense and reasonable attorneys' fees and expenses) incurred by Alsco in this action and in connection with obtaining and enforcing the foregoing order, both before and after judgment and until paid in full;

E.      For such other and further relief as the Court deems just and equitable.

DATED this 5th day of April, 2011.

                      /s/ Robert G. Crockett
                      Peter W. Billings
                      Robert G. Crockett
                      FABIAN & CLENDENIN
                        A Professional Corporation
                      Attorneys for Plaintiff

4853-0188-2633, v. 1